UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

LESLIE JOE NANCE,

    Plaintiff

v.                                    Civil Action No. 2:02-0266

KENTUCKY NATIONAL
INSURANCE COMPANY

        Defendant

MEMORANDUM ORDER

        The matter before the court is plaintiff's motion to
apply West Virginia law, filed November 29, 2004.  By order dated
January 14, 2005, the parties were directed to "stipulate in
writing insofar as feasible to the facts that form the answers to
the § 145 factors and file the stipulation, together with a
statement of their respective positions on the facts relating to
the § 145 factors on which they cannot agree, on or before
January 21, 2005."  The court has received on September 22, 2005,
the required stipulation, and the matter is now ripe for the
court's consideration.

        Section 145, for which the parties were to provide
further information, states as follows:

§ 145. The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971).

The parties agree that at all relevant times, defendant was licensed to sell insurance in West Virginia (Stip. ¶ 12), that it was required to obtain approval from the West Virginia Department of Insurance for all rates and forms, including its applications and policies (Stip. ¶ 12), and that an independent West Virginia insurance agent sold the applicable policy to plaintiff in West Virginia (Stip. ¶¶ 14-16).  They further agree

2

that defendant was required to pay premium taxes in West Virginia
(Stip. ¶ 17), and to provide to the state of West Virginia annual
reports, including information about earned and unearned
premiums, reserves set, and amount of claims paid (Stip. ¶ 18).
Though directed to do so by the court's January 14th order, the
parties did not stipulate to or otherwise provide detailed
information as to the situs of defendant's headquarters, its
principal place of business, or the claims adjusting.

        The court notes that defendant provided a copy of the
policy of insurance, attached to the affidavit of Thomas Malone,
filed January 18, 2005, which affidavit plaintiff subsequently
moved to strike.[1]  The policy reflects that plaintiff was allowed
to select a limit of liability for his uninsured motorists
coverage in accordance with W.Va. Code § 33-6-31.  Defendant
filed a supplemental affidavit of Malone on August 17, 2005, in
which Malone avers that defendant's headquarters and principal
place of business both are located in Lexington, Kentucky.
Plaintiff has moved to strike the entire affidavit based on
Malone's conclusionally having stated that "the site of the

---

        [1]     Plaintiff's motion was denied as moot, without
prejudice, by order dated September 22, 2005, based on
defendant's having filed a "supplemental" affidavit on August 17,
2005.

                                3

claims adjusting was Kentucky," despite having identified, in
that same affidavit, claims adjusters working on the claim from
New York and New Jersey, as well as Kentucky.  Plaintiff's
objection in this respect is well taken.  No objection having
been made to Malone's statements regarding the location of
defendant's headquarters and principal place of business,
however, the court understands both to be found within Kentucky.

        Based on the court's evaluation of the information
provided, it appears that plaintiff asserts an injury occurring
in West Virginia where he is resident (§ 145(2)(a)), which injury
was inflicted from an uncertain location, possibly a combination
of Kentucky, New York, and New Jersey, wherein various agents in
different offices of the defendant or related corporations
handled (or mishandled) plaintiff's claim (§ 145(2)(b)).  The
parties' stipulation indicates a relationship forged in West
Virginia, and probably furthered in that state as well (§
145(2)(d)).  Defendant has its headquarters and principal place
of business in Kentucky, but it also appears to have been
subjected to the laws of West Virginia based on its choosing to
do business here where plaintiff is domiciled (§ 145(2)(c)).
Mindful of these conclusions, the court turns to the § 6
principles.  Section 6 provides:

Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Id. § 6.

Section 6 directs the court to consider the relevant policies of the forum, other states, and the field of law, along with the relative interests of the states.  (§ 6 (b),(c), and (e).)  The purpose of the West Virginia Unfair Trade Practices

5

Act is to ensure fair play by insurance companies and protect
West Virginia citizens.  <u>Poling v. Motorists Mutual Insurance
Co.</u>, 450 S.E.2d 635, 637 (W.Va. 1994).  Kentucky also has an
unfair claims settlement practices act which, likewise, is
protectionist in nature.  <u>State Farm Mutual Automobile Insurance
Co. v. Reeder</u>, 763 S.W.2d 116, 118 (Ky. 1988).  Both statutes are
shaped from a version of the National Association of Insurance
Commissioners' Model Unfair Claims Settlement Practices Act,
which formerly was contained within the model Unfair Trade
Practices Act.  <u>Reeder</u>, 763 S.W.2d at 118; Thomas Cady, Amy
Andrews, Daniel Cuppett, Mark Glover, and Mary Loss, "The Law of
Insurance Company Claim Misconduct in West Virginia," 101 W.Va.
L. Rev. 1, 82 (Fall 1998).  The policies of West Virginia and
Kentucky, as well as the field of law, thus are substantially
similar.  Each state has an interest in protecting its citizens
and controlling the conduct of insurance companies doing business
within its borders.  Defendant conducts business in many states,
but plaintiff is a resident of West Virginia.

     The Kentucky statute does not provide a civil remedy,
but one is available under K.R.S. § 446.070, which provides that
a "person injured by the violation of any statute may recover
from the offender such damages as he sustained by reason of the

6

violation..." <u>Id.</u>  Kentucky, as West Virginia, recognizes a common law cause of action for first-party bad faith.  <u>Curry v. Fireman's Fund Insurance Co.</u>, 784 S.W.2d 176, 178 (Ky. 1989). Plaintiff could thus maintain his lawsuit in either state.  There is, however, one difference of decisive note with respect to the states' application of the laws: Kentucky may not yet recognize a cause of action for post-litigation conduct under its statute. See <u>Kentucky National Insurance Co. v. Shaffer</u>, 155 S.W.3d 738, n. 4 (Ky. 2005)(Recognizing an unpublished opinion of the Kentucky Court of Appeals "which held Kentucky's [Unfair Claims Settlement Practices Act] only applies to pre-litigation claims and conduct."  The court wrote that "once litigation has commenced, the UCSPA no longer plays a role, but instead the Rules of Civil Procedure provide 'redress for improper conduct of litigants.'")   Though this application is unlike West Virginia's, there is no indication that Kentucky's law is contrary to the "strong public policy" of West Virginia sufficient in itself to prohibit the choice of Kentucky law. See, <u>Paul</u>, 352 S.E.2d at 556.

        The relevant policies of the forum, other states, and the field of law appear to favor, albeit slightly, the use of West Virginia law because plaintiff is a West Virginia citizen,

one of the very persons that state's law was designed to protect.
Though defendant is a Kentucky corporation, that state does not
have a similar interest.  The Kentucky act, like that of West
Virginia, is "protectionist," not punitive, and the balance more
appropriately weighs in favor of the state of residence of the
person meant to be protected.

        With this variance in mind, the court turns to the
remaining factors set forth by the Restatement.  For questions
involving interpretation of an insurance policy, as this one
does, the West Virginia Supreme Court has said that the "needs of
the interstate system" (§ 6(a)) "require that law be applied in
the most uniform and predictable manner possible."  Liberty
Mutual Insurance Co. v. Triangle Industries, Inc., 390 S.E.2d
562, 567 (W.Va. 1990).  That court also has said that "ease in
the determination and application of the law to be applied" (§
6(g)) is "essential to the interpretation of an insurance policy
when the law is not otherwise chosen by the parties."  Id.
These factors, together with the concern for "certainty,
predictability, and uniformity of result" (§ 6 (f)) indicate that
the court should make every effort to apply and interpret the law
in a predictable manner, so that individuals may be ever
cognizant of the laws and policies to which they are bound to

adhere, ensuring compliance where possible and, where there is a
failure of such, allowing for adjudication under reasonably
anticipated standards.  Litigants should not be surprised by
being held to rules they were not likely to know.  For this
reason, the final factor to be addressed by the court becomes
particularly important here.

The "protection of justified expectations" (§ 6(d))
would seem to tip the balance toward application of West Virginia
law.  Because the contract establishing the relationship was
entered into in West Virginia, a state in which Kentucky National
chose to do business, through a West Virginia agent, with a West
Virginia citizen, for an automobile registered and kept in West
Virginia, by a company paying premium taxes in and filing reports
with West Virginia, it seems apparent that both parties would be
justified in believing that any dispute arising from that
relationship would be governed by the laws of West Virginia.  It
is not likely that plaintiff would have expected to lose that
protection in traveling across the state line, nor should
defendant expect that a quarrel related to its business practices
in settling plaintiff's claim under the policy issued to him
would be evaluated by standards foreign to its insured simply
because an event directed by defendant outside plaintiff's home

9

state gives rise to the questioned practices at issue.  Having received the benefit of that business which it sought through its West Virginia insurance agent, and absent more compelling contacts with another jurisdiction, defendant should be subject to the state's laws.

It is accordingly ORDERED that plaintiff's motion to apply West Virginia law be, and it hereby is, granted.  It is further ORDERED that plaintiff's motion to strike the supplemental affidavit of Thomas Malone, filed September 23, 2005, be, and it hereby is, granted in part and otherwise denied, as more fully set forth herein.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: September 30, 2005

John T. Copenhaver, Jr.
United States District Judge